James ADAMS, et al.,
Plaintiffs–Appellees,

v.

JOHNS–MANVILLE CORPORATION,
et al., Defendants,

and

Raymark Industries, Inc.,
Defendant–Appellant.

Nos. 87–15106 through 87–15153.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Memorandum Feb. 22, 1989.

Order and Opinion May 26, 1989.

Douglas Dang and Barbara Adams, Self & Dang, Oakland, Cal., for defendants-appellants.

Richard Gerry, Marcia W. Hughes, Casey, Gerry, Casey, Westbrook, Reed & Hughes, San Diego, Cal., for plaintiffs-appellees.

Before HALL, NOONAN and LEAVY, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

This case involves enforcement of an alleged settlement between Raymark and 49 asbestos personal injury plaintiffs. On appeal, Raymark denies settling these claims and seeks reversal of the district judge's enforcement order on numerous grounds. The facts pertinent to this appeal are set out in detail in *In re Gerry*, 670 F.Supp. 276, 277–79 (N.D.Cal.1987), and will be referred to below as appropriate.

I

■ There are essentially three issues on appeal. First, the district court found that Raymark entered into a settlement agreement. The district court's decision to enforce a settlement agreement is reviewed for an abuse of discretion. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987). Second, Raymark contends that the question of enforcement of an alleged settlement agreement should have been presented to a jury. Entitlement to a jury trial is a question of law, reviewable de novo. *Standard Oil Co. of Cal. v. Arizona*, 738 F.2d 1021, 1022–23 (9th Cir.1984), *cert. denied*, 469 U.S. 1132, 105 S.Ct. 815, 83 L.Ed.2d 807 (1985). Finally, Raymark disputes the district judge's award of interest. Whether a plaintiff is entitled to prejudgment interest is reviewed for an abuse of discretion. *U.S. Dominator v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1106 (9th Cir. 1985); *Columbia Brick Works, Inc. v. Royal Ins. Co.*, 768 F.2d 1066, 1068 (9th Cir.1985).

Our jurisdiction to review these issues is under 28 U.S.C. § 1291.

II

Judge Belloni identified two theories to support the enforcement order—acceptance by silence and equitable estoppel. We will address each theory in turn. Either one alone justifies the conclusion reached by the district judge.

A

■ Under California law, settlement agreements are governed by general principles of contract law. *Varwig v. Leider*, 171 Cal.App.3d 312, 217 Cal.Rptr. 208, 210 (1985). The district court analyzed the transaction involving these 49 cases to determine whether there was an enforceable contract. The plaintiffs made settlement offers to the defense team, which it "tentatively accepted." The defense team, in keeping with routine procedure, subsequently forwarded to each defense counsel its client's apportioned share. The district judge found that Raymark knew that it was apportioned a share for groups 4, 5, and 6. *In re Gerry*, 670 F.2d at 280. At this point, the settlement procedure required each individual defendant to reject the offer within seven days; otherwise, the offer was deemed accepted. The defendants required acceptance in this manner for the purpose of secrecy. *Id.* The judge noted that as a consequence "the only way the plaintiffs could know that Raymark refused the apportionment was if Raymark objected," which it failed to do. *Id.*

In analyzing California contract law, the district judge stated the ordinary rule that silence is not a proper form of acceptance, "unless there is a relationship between the parties or a previous course of dealings pursuant to which silence would be understood as acceptance." *Id.* at 280 n. 4 (quoting *Southern California Acoustics Co. v. C.V. Holder, Inc.*, 71 Cal.2d 719, 456 P.2d 975, 978, 79 Cal.Rptr. 319, 322 (1969)). Turning to the facts of this case, the judge concluded:

Silence for seven days was the defendants' manner of acceptance. This custom was established at the beginning of the settlement process, and followed in

groups one through nine. Thus by its previous course of dealing, Raymark accepted the plaintiffs offer to settle the cases, when after seven days expired it did not object. Raymark did not publicly object until six months after it received the apportionment from the defense negotiating team; therefore it is deemed to have accepted.

Raymark contends that the district judge erred in allowing the silence of Doug Wah, Raymark's counsel, to bind it to the settlement agreement. Raymark faults the judge for "in essence, ... rul[ing] that Raymark's counsel could do by silence what it could not otherwise do by express agreement."

Raymark misconceives the district court's analysis. The district court focused on the action (or inaction) *of Raymark,* and not of its counsel, in concluding that it had entered into the settlement agreements. The judge found:

> The plaintiffs made offers to the defense team to settle the cases in groups 4, 5 and 6. The negotiating team tentatively accepted the offer and sent the apportionments to the various defendants' counsel. *Raymark knew* that the negotiating team was apportioning it a share of the settlement. Tr. at 96–97, 117.

*In re Gerry,* 670 F.Supp. at 280 (emphasis added).

This passage clearly states that "Raymark knew" about the settlement of groups 4, 5, and 6. Raymark, however, apparently construes this language to indicate only that Wah was aware of the apportionment. The district judge's citation to the transcript of the hearing defeats this argument. Immediately after the sentence "Raymark knew ...," the judge first cites to a portion of the hearing that makes it clear that Wah knew about the apportionment. Richard Gerry, one of the plaintiffs' attorneys, initiated the following dialogue with Wah:

Q. Those allocations were made by Evanthia Spanos at the firm of Berry & Berry, were they not?

. . . . .

A. She did the actual mathematical calculations....

Q. Yes. And then she would communicate all of those figures to you and to other—counsel for the other defendants, right?

A. By that time, everybody knew they could multiply the total by their percentage. They knew what they were going to pay, but she formalized it.

Q. And she did do that with you in all nine groups of cases [sic] one, two, three, four, five, six, seven, eight, and nine.

A. That's correct.

Q. And in none of those cases did you ever refuse to accept the allocation; isn't that correct?

A. That's also correct.

Q. And in none of those cases did you reject the overall settlement amount; is that correct?

A. That's correct.

The judge also cited a later portion of Wah's testimony that indicates the district judge's belief that this information was communicated to Raymark. On cross-examination, Wah was explaining a conversation between him and his client about the possibility of reentering settlement negotiations and the effect this would have on the cases that already were settled purportedly in Raymark's absence:

> And my client said, "How many cases approximately were settled?"

. . . . .

> [My client] finally said, "Well, is there a requirement of [sic] that going back into this thing that you have to settle those?"

> And I said, "I don't know. I have not talked to the judge."

> And they said, *"We're not going to pay the prices that were allotted."* (emphasis added).[1]

1. There are other indications in the record making it plain that the district judge was referring specifically to Raymark's knowledge. At the inception of the hearing, the judge made perfectly clear that he sought to discover the extent of Raymark's knowledge. He hypothesized: "It's possible, for example, that Raymark, not Raymark's counsel, but Raymark, Inc., may

■ This conversation between Wah and Raymark occurred sometime after May 20, 1985. Thus, while this testimony establishes Raymark's knowledge about the allotments, it fails to specify the time when Raymark first discovered this information. Wah's testimony indicates that Raymark knew about the allocation before the settlement of group 6, but not necessarily before groups 4 and 5. Other evidence adduced at the hearing, however, provides support for the district court's finding that Raymark knew about its involvement in the allotment throughout the entire settlement process.

The district court was determined to probe the extent of Raymark's knowledge. During Raymark's counsel's cross-examination of Wah, the court interrupted:

> The court: Awhile ago, a witness wanted to testify and did testify on the statement of the law that knowledge to any attorney in California is knowledge to the principal subjected to.
>
> But whether that's the law or not, Raymark knew what you were doing, didn't they? Did you keep something from them?

have accepted this settlement by its actions or inactions."

The judge's eagerness to discover this information again was made public in an early exchange between himself and Gerry, who was making some preliminary remarks at the hearing:

> The court: Do you have any reason to know that the responsible people in Raymark had this information directly? ...
>
> . . . . .
>
> You don't know whether any of Raymark's officers or responsible employees were kept aware of what was going on?
> Mr. Gerry: No. We hope to find that out today.

2. In its motion for reconsideration, Raymark argued that one of its lawyers, Mr. Trapani, timely communicated to the plaintiffs its disapproval of any settlements in group 6. Accordingly, Raymark contends that the district judge's enforcement order must be reversed at least with regard to this group.

Raymark bases this alleged communication on an affidavit submitted contemporaneous with its motion to reconsider. This allegation, however, was not presented to the district judge during the September 4th hearing. Consequently, the judge refused even to consider it, con-

The witness: Knew what I was doing with regards to the federal court program generally?
The court: Yes, and the program you had set out?
The witness: Yes.

In light of this dialogue, and viewing the hearing as a whole, the district judge's finding is not clearly erroneous.

■ In conclusion, the district judge in fact analyzed Raymark's knowledge and conduct and concluded that its silence constituted an acceptance. Given the parties' previous course of dealings, Raymark had a duty under California law to object to the offers. Raymark contends that it did this by withdrawing from the settlement process. But as the district judge found, its intent to withdraw, if indeed it existed, was not communicated to the plaintiffs. This finding is amply supported by the record. Therefore, Raymark entered into an enforceable contract with the plaintiffs to settle the cases in groups 4, 5, and 6.[2]

**B**

■ A party, by his action or inaction, may cause another to act to his detriment.

cluding that Raymark failed to establish that this information was admissible as "newly discovered evidence" under Fed.R.Civ.P. 60(b)(2).

Rule 60(b)(2) may be invoked to relieve a party from a final order because of "newly discovered evidence that by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Raymark presented no evidence that this information could not have been discovered before the hearing, and the district judge concluded that Raymark was aware of all the facts alleged in the affidavit "long before" that time. The judge also concluded that Trapani's affidavit probably would not affect the outcome of the decision, which is another factor in determining whether to provide relief for the moving party. See 7 J. Moore, Moore's Federal Practice ¶ 60.23[4] (2d ed.1979).

Raymark on appeal once again fails to address whether this information should be considered as "newly discovered evidence." The district judge did not abuse his discretion by failing to provide the relief sought. See Music Research, Inc. v. Vanguard Recording Soc., Inc., 547 F.2d 192 (2d Cir.1976); cf. Thompson v. Housing Authority of the City of Los Angeles, 782 F.2d 829, 832 (9th Cir.1986) (abuse of discretion standard when reviewing denial of motion for relief under Rule 60(b)(1) and (6)).

The law has developed the doctrine of equitable estoppel to prevent injustice that may result from this. Under California law, the party invoking this doctrine must prove: (1) that the party to be estopped was apprised of the facts; (2) that he intended his conduct to be acted on, or that he acted in such a way that the party asserting estoppel reasonably could believe that he intended his conduct to be acted upon; (3) that the party asserting estoppel was ignorant of the actual facts; and (4) that the party asserting estoppel relied upon the conduct to his injury. *Crestline Mobile Homes Mfg. v. Pacific Fin. Corp.*, 54 Cal.2d 773, 356 P.2d 192, 8 Cal.Rptr. 448 (1960).

The district judge analyzed each of the elements of equitable estoppel in detail and concluded that the plaintiffs had carried their burden. This analysis, which is factually intensive, is persuasively set forth in *In re Gerry*, 670 F.Supp. at 280.

Raymark launches one basic attack on these findings: the district judge improperly relied on the conduct of Raymark's counsel, instead of focusing on the actions of Raymark itself. Raymark quotes the following passages of the district court's opinion for support:

> Mr. Wah testified that Raymark requested that he keep it informed of the amount and the apportionment of the settlement values of Groups [sic] 4, 5 and 6, and that he did keep it informed. Raymark also received, by service on Fisher

and Hurst, its apportionment of cases in groups 4, 5 and 6....

> Mr. Wah testified that Raymark never objected to the settlement amount or its allotment in groups 4, 5 and 6.... Raymark never requested a status conference with Judge Peckham to set the allegedly unsettled cases for trial.... Raymark's counsel said nothing of Raymark's purported withdrawal from the settlement process....

■ As previously demonstrated in the context of the contract theory, Raymark mistakes the district judge's focus. The district judge did not rely on the conduct of Raymark's counsel in finding the existence of estoppel; instead, in arriving at this conclusion the judge emphasized *Raymark's* inaction. Significantly, the district judge stated at the outset of the above-quoted passage: "Mr. Wah testified that Raymark requested that he keep it informed of the amount and the apportionment of the settlement values of groups 4, 5 and 6, and that he did keep it informed." *In re Gerry*, 670 F.Supp. at 280. In other words, Raymark knew that it was being apportioned a share of the settlement for the cases at issue, yet failed to intervene. This failure, and not any failure of Raymark's counsel, formed the basis of the estoppel theory.[3]

### III

■ Raymark next contends that it was entitled to, and yet was deprived of, a full

---

**3.** Raymark argues that

> the Courts established a rigid requirement of client participation and consent in all settlements. This standard is inviolate and must be closely protected in order to give all litigants their fair day in court. Without such a standard or with loose rules of adherence to the standard, clients [sic] rights could be compromised ro [sic] abandoned at an attorney's will or for his convenience.

Raymark is confusing the theories of equitable estoppel and settlement authority. The former focuses on the actions of the client, while the latter analyzes the conduct of the attorney. Under the theory of estoppel, there is no danger that "clients [sic] rights could be compromised ro [sic] abandoned at an attorney's will or for his convenience." *Id.* If those rights are compromised, it is at the hand of the client, not the attorney.

This confusion leads Raymark to another erroneous argument:

> If the theories espoused by Judge Belloni are sufficient to enforce settlements against parties who do not expressly authorize those settlements, then cases like *Blanton* ... have no meaning. The Courts in those cases could have easily found that the nonconsenting party was estopped from denying the settlement due to the actions or inactions of counsel.

*Id.*

Once again, estoppel does not examine the "actions or inactions of counsel." Unlike Raymark, the client in *Blanton*, upon learning of her attorney's stipulation to binding arbitration, immediately objected and fired him. There simply was no basis for finding estoppel in that case.

evidentiary hearing. Ordinarily, a district court is empowered to enforce a settlement agreement through summary proceedings. *Callie v. Near,* 829 F.2d 888, 890 (9th Cir. 1987); *see also Russell v. Puget Sound Tug & Barge Co.,* 737 F.2d 1510, 1511 (9th Cir.1984). However, where the parties dispute the existence or terms of the agreement, an evidentiary hearing is required. *Callie,* 829 F.2d at 890. Since Raymark disputes the facts that formed the bases for the district court's finding of a contract and equitable estoppel, it was entitled to an evidentiary hearing.

Raymark complains that the September 4, 1987, hearing "was in the nature of a summary enforcement." Essentially, Raymark bases this characterization on its misperception of the scope of the proceeding. According to Raymark, "[t]he proper scope of the hearing was to determine if the alleged settlements could be summarily enforced." "Since Judge Peckham had twice decided that the alleged agreements could not be enforced," reasons Raymark, "there seemed to be little reason for another hearing." Consequently, Raymark only produced one witness during the hearing.

Raymark's misunderstanding of the scope of the proceedings cannot be squared with the record. In his introductory remarks at the September 4th hearing, the district judge informed the parties that he would probe theories of enforcement that were not before Judge Peckham. He stated:

> It's possible, for example, that Raymark, not Raymark's counsel, but Raymark, Inc., may have accepted this settlement by its actions or inactions....
>
> I don't think there's any question under anybody's contract law that you can designate anything you want to as an acceptance of any offer. If you agree to it beforehand, you can accept an offer by scratching your right ear or anything, or being silent for two or three days when you have a duty to speak out.

The judge, therefore, made plain that the alleged settlement agreement might be enforced on the theory that Raymark accepted the plaintiffs' offers by silence. This legal theory was reiterated, and the possibility of equitable estoppel was introduced, at the close of Raymark's counsel's opening remarks. The judge admonished Gerry:

> But the last few remarks made by Mr. Trapani [Raymark's counsel] are certainly impressive. You have *Blanton versus Womancare;* you have Judge Peckham's interpretation of that case, which doesn't seem to be wrong to me.
>
> *So it seems to me that if you're going to prevail in this motion, you're going to have to point out to me some other way that Raymark becomes bound, either by contract, by estoppel, or some way.*
>
> I thought maybe that these notices had gone directly to the Raymark People, not only to Doug Wah, but also to Raymark responsible personnel, perhaps imposing upon them a duty to speak out. (emphasis added).

Raymark, therefore, had notice that the purpose of the hearing was not to rehash the theory of settlement authority, which had been decided by Judge Peckham. Nevertheless, Raymark failed to object to the nature of the proceedings, until its motion for reconsideration.

In his order denying reconsideration, the judge persuasively reasoned:

> Raymark did in fact receive an evidentiary hearing on the issue of formation of the settlement agreement. The court notified the parties that it would receive any testimony that the parties wanted to offer. There was no limit placed on the number of witnesses the parties called. Raymark only called Mr. Bondonno to testify. There is no explanation as to why the other witnesses that Raymark now considers so crucial were not subpoenaed to appear at the initial hearing. Nor did Raymark state that it wanted to offer additional testimony. Further, Raymark participated in the evidentiary hearing without objection, and cross-examined Ms. Hughes, Mr. Wah, and Mr. Gerry.

The district judge thus imposed no limitations on the number of witnesses that Ray-

mark could call at this hearing. In essence, Raymark's complaint on appeal is its failure to adduce more evidence because of its subjective and foundationless misperception of the purpose of the proceeding. Raymark cannot contend that it lacked the opportunity to produce more evidence than it did. Its allegation that "Raymark was not given a proper opportunity to cross-examine the witnesses, such as Judge Anello and Julie Torres," is without merit.[4]

 In conclusion, the district judge in fact held an evidentiary hearing, which gave Raymark the opportunity to call whatever witnesses it deemed necessary and the right to cross-examine the witnesses presented against it. Moreover, Raymark was permitted to present relevant affidavits and to dispute factual statements alleged against it. These opportunities distinguish the cases upon which Raymark relies. For example, Raymark cites *Autera v. Robinson*, 419 F.2d 1197, 1202 (D.C. Cir.1969), which held that an evidentiary hearing is required when there is a dispute about the formation of a settlement agreement. In *Autera* the district court conducted a five-minute hearing, in which the parties were unable to examine witnesses. *Id.* at 1199. The D.C. Circuit reversed and remanded, noting the following procedural deficiencies: "The opportunity to judge the credibility was nonexistent; the opportunity to probe by cross-examination was completely lacking." *Id.* at 1202. As shown, Raymark cannot claim these deficiencies.[5] Consequently, its procedural claim is without merit.

## IV

The seventh amendment to the Constitution "preserve[s]" the right to a jury trial "[i]n Suits at common law, where the value in controversy shall exceed twenty dol-

lars." U.S. Const. amend. VII. In a diversity action, the parties' entitlement to a jury trial is determined by federal law. *Simler v. Conner*, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); *Klein v. Shell Oil Co.*, 386 F.2d 659, 662 (8th Cir.1967). Raymark contends that it was entitled to a jury determination of the issues raised by the motion to enforce the settlement agreements.

 In determining whether Raymark is entitled to a jury trial, we must apply an historical test: whether the nature of the claim is legal or equitable. *See American Universal Ins. Co. v. Pugh*, 821 F.2d 1352, 1355 (9th Cir.1987); *In re Fin. Sec. Litig.*, 609 F.2d 411, 422 (9th Cir.1979), *cert. denied*, 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980). Three factors are considered: the premerger custom; the remedy sought; and the practical abilities and limitations of juries. *American Universal Ins. Co.*, 821 F.2d at 1355 (citing *Ross v. Bernhard*, 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970)). *But see In re Fin. Sec. Litig.*, 609 F.2d at 424–26 (repudiating this third factor as an appropriate consideration). In applying the Ninth Circuit analysis to this case, Raymark's claim must fail. The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract. "An action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court." *Owens–Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1189 (3d Cir.1979) (citations omitted); *see also* 5 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice ¶ 38.21, at 38–192 (2d ed. 1979) ("[I]n an action for specific performance uncomplicated by other requests for relief or by counterclaims, there is no right to a jury trial."). This is

---

4. In addition to being able to introduce live testimony, the parties were permitted to submit affidavits. Ten affidavits were provided to the court, which were duly considered. *In re Gerry*, 670 F.Supp. at 277 n. 1. Moreover, the district judge notified the parties that he would deem statements in the affidavits as being true, unless objected to or disputed.

5. Raymark also cites *Callie v. Near*, 829 F.2d 888 (9th Cir.1987); *Kukla v. National Distiller Prods. Co.*, 483 F.2d 619, 621–22 (6th Cir.1973); *Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386 (5th Cir.1984); and *Millner v. Norfolk & W.R. Co.*, 643 F.2d 1005 (4th Cir.1981), in support of its claim of error. For the reasons articulated in distinguishing *Autera*, these cases do not favor Raymark's position.

so even if the party resisting specific enforcement disputes the formation of the contract. *See Medtronic, Inc. v. Benda,* 689 F.2d 645, 661 (7th Cir.1982) (defendants' defense of lack of consideration in action for specific performance did not convert equitable action into legal one), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983). Consequently, Raymark was not deprived of a constitutional right to a jury trial.

*Warner v. Rossignol,* 513 F.2d 678, 683 (1st Cir.1975), supports this conclusion. The First Circuit analyzed the plaintiff's claim of a right to a jury trial when the defendant moved to enforce a settlement agreement. The court held that this motion was in the form of specific performance, an equitable proceeding not giving rise to a right to a jury trial. *Id.* at 683.[6]

## V

Raymark's final contention is that the district judge erroneously awarded the plaintiffs prejudgment interest. Section 3287(a) of the California Civil Code provides in part:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

Cal.Civ.Code § 3287(a) (West 1987). Under this section, prejudgment interest may be awarded as compensatory damages[7] when the damages are certain or capable of being made certain. "Damages are deemed certain or capable of being made certain ... where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *Esgro Cent., Inc. v. General Ins. Co. of Am.,* 20 Cal.App.3d 1054, 1060, 98 Cal.Rptr. 153, 157 (1971). In a breach of contract action, where the damages are liquidated, interest is recoverable from the date of the breach until the date of judgment. Cal.Jur. § 89, at 178 (3d ed.1975).

Since the parties in the case at bench disputed only the liability and not the computation of damages under the settlement agreement, the plaintiffs were entitled to prejudgment interest. Raymark contends that the award of interest was improper because it "had a court order [from Chief Judge Peckham] which exempted it from payment of these settlements." Apparently, Raymark is relying on the limitation in section 3287(a) that prejudgment interest cannot be imposed when the party was "prevented by law ... from paying the debt." However, Chief Judge Peckham's order merely refused to enforce the settlement agreements based on a theory of settlement authority. This order did not prevent Raymark from paying the debt. Consequently, the district court did not abuse its discretion in ordering interest.[8]

AFFIRMED.

---

**6.** Raymark relies on *Millner v. Norfolk & W.R. Co.,* 643 F.2d 1005 (4th Cir.1981), for his claimed right to a jury trial. That case held that the plaintiff was entitled to a jury determination of his attorney's authority to bind him to a settlement arrangement. In reaching this conclusion, however, the court relied exclusively on the fact that the claim arose out of the Federal Employers' Liability Act, which provides an expansive right to a jury trial. Thus, the district court in the instant case correctly distinguished *Millner.*

**7.** Since prejudment interest is compensatory, Raymark's contention that the district court's award of interest was "punitive" and a "windfall" to the plaintiffs is without merit.

**8.** Raymark does not dispute the rate of interest given.