82 F.3d 422
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FEDERAL RESERVE BANK OF SAN FRANCISCO, a Congressionally
created private corporation, Plaintiff-Appellee,
v.
EATON CORPORATION, a corporation; Eaton-Kenway Inc., a
corporation, Defendants-Appellants.
 No. 95-16220.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1996.
Decided April 11, 1996.
 
 Before: REINHARDT, THOMPSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORDANDUM*
 
 
 2
 Eaton Corporation and Eaton-Kenway Inc. (collectively Eaton) appeal the district court's order denying their motion to compel arbitration of a suit for breach of contract and other claims brought by the Federal Reserve Bank of San Francisco (the Bank). Eaton argues the district court erred in determining that a proposed arbitration clause was not adopted as a contract term. We have jurisdiction under 9 U.S.C. § 16(a)(1)(B) and we affirm.
 
 FACTS
 
 3
 In 1991, the Bank requested proposals for an automated system to store and retrieve pallets of currency inside bank vaults. Eaton was awarded the contract. Rather than create a new contract from scratch, the parties pieced together offer and acceptance documents they had already exchanged, and supplemented them with a final section outlining changes to the terms of the Bank's original offer.
 
 
 4
 In 1995, after various delays and problems, the Bank sued Eaton and two successor companies for breach of contract, rescission, and other claims. In response, Eaton moved the district court to compel arbitration of the Bank's claims, citing a disputes resolution clause Eaton contended was a contract term. The Bank opposed arbitration, arguing that Eaton's proposal to add a disputes resolution clause was not accepted and the clause never became a contract term.
 
 
 5
 After reviewing the agreement, the district court determined the proposed disputes resolution clause was not a contract term. The court denied Eaton's motion to compel arbitration, and Eaton appealed.
 
 DISCUSSION
 
 6
 We review de novo the district court's decision that the arbitration clause was not a contract term. In re Agric. Research & Technology Group, Inc., 916 F.2d 528, 537 (9th Cir.1990). The federal policy favoring arbitration does not influence our analysis of whether an arbitration clause was adopted as a contract term. First Options v. Kaplan, 115 S.Ct. 1920, 1924-25 (1995).
 
 
 7
 The district court ruled that Eaton's proposed arbitration clause was never made a term of the final contract. In making this determination, the district court assessed the language and structure of the more than 400-page agreement to discern its meaning as a whole. "The meaning of the words contained in a contract is to be determined not from a consideration of the words alone but from a reading of the entire contract." Brobeck, Phleger & Harrison v. Telex Corp., 602 F.2d 866, 872 (9th Cir.1976) (quoting Sunset Securities Co. v. Coward McCann, Inc., 47 Cal.2d 907, 911 (1957)). The district court decided the contract was unambiguous and could be interpreted without reliance on extrinsic evidence.
 
 
 8
 In interpreting the contract, the district court cited certain aspects of the language and structure that prompted the court to determine that the disputes clause was not a contract term.
 
 
 9
 In particular, the court noted that in its acceptance, Eaton suggested modifying the contract to include the arbitration clause but did not indicate that this proposed addition was a condition of its acceptance of the Bank's offer. "No where does the contract alter the clause's status as a suggested term and adopt the clause as a final term of the agreement."
 
 
 10
 The final amendments section of the contract explicitly adopted some but not all of Eaton's requested modifications. The district court determined that this aspect of the agreement was inconsistent with Eaton's claim that all of its suggested changes, including those not restated in the amendments, were adopted. Not only was the disputes clause not restated in the amendments text; it was not accounted for in the numbering scheme of the amendments section.
 
 
 11
 Furthermore, the court noted that the interpretation of the contract urged by Eaton would yield a document containing inconsistent clauses which simultaneously require arbitration and allow Eaton to pursue remedies in court.
 
 
 12
 Interpreting the meaning of the contract as a whole, the same characteristics of the agreement noted by the district court prompt us to affirm. Given the existence in the contract of a final section explicitly setting out amendments to the terms of the Bank's original offer, it would be unreasonable to read the contract to also incorporate the terms Eaton proposed which are not restated in this final section.
 
 
 13
 We also reject Eaton's argument that when the Bank failed to reply to some of Eaton's requested modifications, its "silence" constituted assent. An offeror may not force an offeree to make an express rejection, absent special circumstances not relevant in this case. Sorg v. Fred Weisz & Associates, 14 Cal.App.3d 78, 81 (1970). Adams v. Johns-Manville Corp., 876 F.2d 702, 704 (9th Cir.1989). Eaton pled no facts to support its claim the Bank had a duty to explicitly accept or reject each of Eaton's proposed changes.
 
 
 14
 Only one aspect of this lengthy contract lends any support to Eaton's proffered interpretation. This is the signature page, which states that the contract is composed of the five discrete documents the parties had melded together into an agreement. One of these documents was Eaton's acceptance, which included its suggestion that a disputes clause be included. Eaton's entire interpretation is premised on a strictly literal reading of the signature page sentence identifying the discrete documents comprising the contract. However, application of a strictly literal interpretation to this sentence would violate the court's mandate to discern the intent of the parties from a reading of the entire contract. This we decline to do.
 
 CONCLUSION
 
 15
 In sum, we conclude that, as a matter of law, the only reasonable interpretation of this agreement is that Eaton's proposal to add disputes resolution clause was not adopted in the final document. We, therefore, affirm the decision of the district court denying the motion to compel arbitration.
 
 
 16
 AFFIRMED.
 
 
 17
 REINHARDT, Circuit Judge, dissenting.
 
 
 18
 I respectfully dissent. The signature page of the contract clearly states that the contract consists of Exhibits A, B, C, D, and E. It does not say that the contract consists of some parts of these Exhibits and not others. The dispute resolution clause at issue is in Exhibit C and is therefore included in the contract. The district court nevertheless found, for four reasons, that the dispute resolution clause was not part of the contract. None of them is persuasive.
 
 
 19
 The district judge emphasized that Exhibit C states that the disputes resolution clause and other proposed modifications to the FRB's initial proposal are merely suggestions, and that nothing in the contract alters that status as suggested terms. It is clear that all of Exhibit C was originally Eaton-Kenway's proposal, was merely a suggestion, and was so labeled. It ceased to be a suggestion, however, when the parties agreed to, and did, incorporate Exhibit C in the contract. It then became a part of the contract, just like Exhibits A, B, and D.
 
 
 20
 The district court also determined that if Exhibit C, and its Disputes Resolution Clause were part of the contract, it would have been unnecessary for Exhibit E, which serves to amend Exhibits A, B, and C, to "expressly incorporate[] two of Exhibit C's proposed changes to the General and Specific Conditions." This statement is not precisely correct. In Exhibit C, Eaton-Kenway proposed that certain language be deleted and then stated, "Contractor will not indemnify bank for their actions." It is not clear whether this statement was a proposed addition, or more likely, Eaton-Kenway's interpretation of SC-8 as it wanted it modified. In Exhibit E, while the exact deletion proposed by E-K is restated, the statement about indemnification is not included. Thus, Exhibit E amends the relevant portion of Exhibit C and does not incorporate E-K's proposal verbatim. Similarly, in Exhibit C under the heading Article GC-59, it states "[t]his clause is self deleting and as such does not become part of the contract." In Exhibit E under the same heading, it merely states "delete." If both Exhibit E and Exhibit C had said "delete" under GC-59, the redundancy might provide some argument in support of the district court's position. However, the material in Exhibit C regarding Article GC-59 is at best ambiguous. It could be read as E-K's interpretation of GC-59 rather than a proposal that it be deleted, especially since in other places in Exhibit C, E-K explicitly requests that certain words be deleted. Exhibit E serves to amend Exhibit C to make clear that the parties have actually deleted GC-59. In any event, a single redundancy would fall far short of a compelling reason to conclude that the contract did not incorporate the provisions of Exhibit C when its terms state precisely the opposite.
 
 
 21
 Because all the special conditions in the contract except the dispute resolution clause have numbers, the district court decided that the dispute resolution clause was not included in the contract. This reasoning is in no way persuasive. Instead of being introduced by a number when it was included in Exhibit C, the disputes resolution provision was labelled an "additional clause" because it was the only new clause set forth in that Exhibit--the only provision that does not modify an already-numbered special condition set forth previously in Exhibit B of the Contract. Perhaps it would have been easier for everyone concerned if when preparing Exhibit C, E-K had given the new clause a number rather than simply calling it an "additional clause". But there is very little about the structure or drafting of the contract that could be termed perfect, and this particular failure to achieve perfection, like the possible minor redundancy discussed earlier, is of little significance in a contract as sloppily drafted as this one. Certainly, the use of the term "additional clause", rather than the use of a number, cannot serve to override the explicit binding written statement that Exhibit C is part of the contract.
 
 
 22
 The district court also found that the inclusion of a dispute resolution clause calling for arbitration in certain instances was inconsistent with GC-13, which gives E-K "the right to pursue any of its rights and remedies through a court of competent jurisdiction," after the FRB has made its "final" interpretation of the contract. Once again, I see no inconsistency here, and, certainly, none that would support the district judge's conclusion. Despite the broad language of the first sentence of the disputes resolution clause, it appears from the content of the clause that its purpose is to resolve certain disputes about complex technical matters. The clause also explicitly states, "[t]he agreement to submit certain disputes to a panel [with expertise in installation and operation of automated material handling systems] as set forth in this paragraph only relates to disputes concerning responsiblities to satisfy the requirements of the Contract, and not to any other dispute which may arise under this Agreement." As such, it is similar to provisions in many government contracts providing for a separate procedure to resolve technical issues under the contract, notwithstanding a different contractual procedure for other more general types of disputes. The existence of two separate resolution procedures does not by any means create a contractual conflict.
 
 
 23
 Finally, the majority adds another reason of its own for reaching its unfortunate conclusion. The majority contends that EK's Exhibit C provision relating to arbitration did not become part of the contract because silence does not constitute assent. That contention is even less persuasive than the reasons advanced by the district court. Indeed, it is clearly without merit. The cases the majority cites to support the proposition that silence does not constitute assent, Sorg v. Fred Weisz & Associates, 14 Cal.App.3d 78, 81 (1970), and Adams v. Johns-Manville Corp., 876 F.2d 702, 704 (9th Cir.1989), are wholly inapplicable here. In the cases cited by the majority, the issue was whether silence constituted acceptance to a proposal made by one party and whether, in view of that silence, a binding contract had ever been formed. This is not a case in which one party remained silent when it received Exhibit C. Here it is undisputed that after FRB received Exhibit C it agreed to enter into a contract and it did so. Both parties signed a contract page, which stated that Exhibit C was part of that contract. Thus, silence is indisputably not a factor in this case. The majority simply invokes the wrong line of cases--a line that applies in wholly different circumstances.
 
 
 24
 Cutting through the fog created by the parties, the district court, and the majority, the issue is relatively simple: Are the provisions of Exhibit C nonexistent unless they are repeated in Exhibit E? It seems quite clear that the opposite is true. All provisions in Exhibits A, B, C, and D remain in the contract unless amended or deleted in Exhibit E. Exhibit E simply consists of six pages of provisions (plus some pages of technical materials) that make changes to provisions already contained in Exhibits A, B, C, and D. Exhibit C is no different from Exhibits A, B, and D in that its provisions are to be given effect unless specifically amended or deleted by Exhibit E. The disputes resolution clause provision set forth in Exhibit C is not mentioned in Exhibit E and therefore remains a functional provision of the agreement between the parties.
 
 
 25
 For these reasons, I would reverse and remand the matter to the district court to determine what disputes between the parties are governed by the arbitration clause.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3