**ORDERED PUBLISHED**

FILED

OCT 4 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>FRANK LANE ITALIANE, JR. and<br>ALICIA ITALIANE,<br>                    Debtors. | BAP No. EC-20-1247-SGF<br><br>Bk. No. 1:11-bk-63503<br><br>Adv. No. 1:12-ap-01053 |
| FRANK LANE ITALIANE, JR.,<br>                    Appellant,<br>v.<br>JEFFREY CATANZARITE FAMILY<br>LIMITED PARTNERSHIP; ERON<br>MARTIN; WOLFGANG GREINKE,<br>Trustee of the Greinke Family Trust;<br>WESLEY LARSEN; BRIAN HICKS,<br>Trustee of the Hicks Family Trust U/D/T<br>10/01/2001; STEVEN NAZAROFF, Trustee<br>of the Steven Nazaroff Retirement Trust;<br>THE NAZAROFF FAMILY<br>PARTNERSHIP; TRICIA PRENTICE;<br>ROBERT STROHBACH, Trustee of the<br>Strohbach Living Trust; CATHY GALIE-<br>LEWIS; LEASON V. "CHET" LEEDS,<br>Trustee of the Leason V. Leeds Trust;<br>LYNAE ARNOLD; LIZ MALONE,<br>Trustee of the Malone Family Trust,<br>                    Appellees. | OPINION |

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Rene Lastreto, II, Bankruptcy Judge, Presiding

APPERANCES:

Appellant Frank Lane Italiane, Jr. argued pro se; Joseph Scott Klapach of Klapach & Klapach, P.C. argued for appellees.

Before: SPRAKER, GAN, and FARIS, Bankruptcy Judges.

Opinion by Judge Spraker
Concurrence by Judge Faris

SPRAKER, Bankruptcy Judge.

## INTRODUCTION

Chapter 7[1] debtor Frank Lane Italiane, Jr. ("Lane") appeals from a judgment excepting a $1.5 million judgment from discharge under § 523(a)(2)(A). During trial in the state court action, Lane consented to entry of the judgment on the claim of fraudulent concealment in favor of investors he induced to invest in his roofing products company. The bankruptcy court determined that the stipulated judgment for fraudulent concealment should be given issue preclusive effect entitling the plaintiff investors to summary judgment on their § 523(a)(2)(A) claim for relief.

The circumstances surrounding the state court's entry of the stipulated judgment support the application of issue preclusion in this case. Accordingly, we AFFIRM.

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

## FACTS[2]

### A.    Lane's involvement with ArmorLite Roofing, LLC.

Lane formed ArmorLite Roofing, LLC ("ArmorLite") in 2004 to develop, produce, and sell a patented high-tech roofing system that was both very durable and highly fire resistant. He also served as an officer, director, and manager. In those capacities, he "materially assisted" in the preparation of "Offering Materials" for ArmorLite. Lane and ArmorLite developed the Offering Materials for the purpose of persuading others to invest in the company. Lane knew the Offering Materials would be used for that purpose; he reviewed, revised, and approved the Offering Materials. He also made oral representations to prospective and existing investors at public meetings.

In 2008, Lane suffered a severe stroke. He partially recovered from the mental disabilities he experienced after a very long convalescence. As a result of his illness, he stepped down as president and chief executive officer of ArmorLite.

In 2009, ArmorLite's board of directors elected to file bankruptcy for the company. According to plaintiffs, ArmorLite went bankrupt because it failed to convert its successful prototypes into a product that could be mass produced and sold at a competitive price. In contrast, Lane insisted that ArmorLite's patented, high-tech, fire-resistant roofing product was

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case and in plaintiffs' nondischargeability action. *See Atwood v.*

3

"market ready" and that ArmorLite's failure was a product of the Great Recession and his illness. Lane also attributed the company's problems to the mismanagement and hostile takeover machinations of ArmorLite's reconstituted board of directors, which included some of the plaintiffs.

## B.     ArmorLite's investors sue Lane.

In February 2010, plaintiffs filed a complaint in the Los Angeles County Superior Court against Lane and others for, among other things, securities fraud under California law, fraudulent misrepresentation, fraudulent nondisclosure, and conspiracy to commit fraud. Plaintiffs claimed that Lane fraudulently induced them to acquire roughly $2.4 million in membership interests in ArmorLite based on his affirmative misrepresentations and nondisclosure of material facts regarding ArmorLite's roofing product. The alleged misrepresentations included: (1) that ArmorLite had fully developed a patented, high-technology roofing system that had obtained a Class "A" fire rating — the highest fire resistance rating available; and (2) that ArmorLite was ready to market its Class "A" rated product to contractors and the general public. Plaintiffs additionally alleged that Lane fraudulently failed to disclose that ArmorLite had changed the formula for ArmorLite's roofing product and that the product as modified had not been tested before being mass produced and marketed. Plaintiffs maintained that the modified roofing product ultimately failed to pass the Class "A" rating test when a testing

---

*Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

agency later audited the product. Years of litigation followed, including discovery and motion practice.

## C. Lane files for bankruptcy and the state court action proceeds to trial.

In December 2011, in the midst of this litigation, Lane filed his chapter 7 bankruptcy case. Plaintiffs timely filed their nondischargeability adversary proceeding under § 523(a)(2)(A) based largely on the same allegations stated in their state court action. The bankruptcy court sua sponte entered an order abstaining from adjudicating Lane's liability for fraud based on its conclusion that "it appears that the State Court Action arises out of the same set of facts and includes essentially the same claims for relief as pled in the adversary proceeding." The bankruptcy court granted relief from stay to permit plaintiffs to litigate their fraud claims to final judgment in the state court. The court specifically noted in its abstention order that the nondischargeability action would resume if necessary to determine the dischargeability of any fraud judgment plaintiffs might obtain from the state court. The bankruptcy court further noted that, if the nondischargeability action resumed, it might then consider applying issue preclusion to the state court's findings of fact and conclusions of law if appropriate.

The parties resumed their state court litigation. In September 2013, the state court denied plaintiffs' motion for summary judgment against Lane. As part of the motion, the state court considered extensive evidence

5

presented by both sides. It initially observed that plaintiffs had established a prima facie case of securities fraud under California law. The court explained that the burden then shifted to Lane to establish the existence of a triable issue of material fact. After considering Lane's evidence, the court ultimately concluded that there was a triable issue as to whether he made any material misrepresentations or omissions. The court adopted the exact same reasoning in denying summary adjudication of plaintiffs' misrepresentation, concealment, and conspiracy causes of action.

In September 2015, the parties commenced trial, without a jury. Lane was represented by counsel throughout the trial, which occurred over a 25-day period in late September and early October of 2015. Prior to the conclusion of the trial, the parties reached a settlement. Because the bankruptcy court's later nondischargeability judgment hinges on the settlement and the resulting stipulated judgment, we recount the circumstances surrounding the settlement, and its aftermath, in detail.

**D.     The parties' settlement of the state court action.**

On October 16, 2015, Lane and some of the plaintiffs submitted to the court a handwritten "shortform" settlement agreement. All of the plaintiffs who were present, as well as Lane, signed that written agreement. Plaintiffs' counsel represented that his remaining clients had authorized him to enter into the settlement for them.

Plaintiffs' counsel then explained some of the basic terms. He said that "[t]he stipulated judgment will be for fraudulent concealment" and

6

"[i]t will be nondischargeable in bankruptcy court." He also stated that judgment would not be filed for a period of one year and that the settlement and stipulated judgment would be confidential until the stipulated judgment was filed.

The court then asked Lane a series of questions regarding whether he understood that he could not back out of the settlement once it was entered into on the record. The court also inquired whether he was entering into the settlement agreement freely and voluntarily, and not as a result of duress. Lane answered affirmatively but added that the stipulated judgment was subject to a caveat or condition. According to Lane, if he could obtain "ICC approval" for the current version of ArmorLite's roofing product and thereby resurrect the viability of the roofing product, the stipulated judgment would not be effective, and the fraud litigation would be dismissed. The court and Lane's counsel explained to him that his condition was not part of the settlement. Rather, the settlement provided an immediate end to the fraud litigation in exchange for a $1.5 million stipulated judgment against Lane. They further explained that further negotiations during the year prior to entry of the judgment could lead to an agreement along the lines Lane sought but that was not part of the existing agreement. Moreover, they explained that there were no guaranties that there ever would be any other agreement.

Lane then asked the court whether his condition could be added to the settlement. The court responded that it was not a participant in the

settlement negotiations, which were between the parties and their counsel. The court then took a short recess during which the parties discussed the matter. When the hearing resumed, Lane's counsel stated that her client was prepared to agree with the terms of the stipulated judgment and was not going to attempt to "add any terms."

The court then resumed his colloquy with Lane, asking him again whether his agreement was of his own free will, was not the result of duress, and whether he understood that the agreement did not include any condition regarding resurrection of ArmorLite's roofing product. Lane answered each question affirmatively and without hesitation. He further expressed his desire to move forward with the settlement. The court also asked each plaintiff present to confirm their understanding of and consent to the agreement. They did. And the court asked plaintiffs' counsel to confirm the same on behalf of the plaintiffs not present, which he did.

Finally, the full, short-form settlement agreement was read into the record. The key terms were as follows:

- Lane agreed to a $1.5 million stipulated judgment against him and in favor of plaintiffs for "fraudulent concealment."
- The judgment amount was to be allocated among plaintiffs in accordance with the amount of their respective investments.
- Lane agreed to stipulate to a bankruptcy court order that the judgment would be excepted from discharge in his pending bankruptcy case. [This stipulation never occurred.]

8

- Plaintiffs agreed that they would not file the stipulated judgment until October 16, 2016 — one year after the parties entered into the settlement on the record in open court.

- All parties agreed to bear their own attorney's fees and costs — including the fees and costs plaintiffs incurred defending against Lane's cross-complaint, which by the time of settlement had been dismissed.

- Plaintiffs agreed they would not attempt to enforce their judgment against any revenue Lane might realize as the author of "Be In Heaven Now." And, if that book was split into multiple titles, the judgment enforcement prohibition applied to those multiple books as well.

- The parties intended the hand written short form agreement to be immediately binding and effective, though they specifically contemplated negotiating, drafting, and executing a long form agreement after the settlement was put on the record.

- The parties would keep the agreement confidential unless and until the stipulated judgment was entered.

- The state court would retain jurisdiction under Cal. Civ. Proc. Code ("CCP") § 664.6 to enforce the agreement.

After the agreement was read into the record, the court gave Lane the opportunity to personally read through it again. The court then explained to him that the agreement was immediately binding and effective on him regardless of whether the parties ever entered into another, longer-form settlement agreement. The court then asked Lane, again, to confirm his understanding and acceptance of the agreement, which he did.

9

**E.    Lane unsuccessfully attempts to vacate the settlement.**

In April 2016, Lane filed in the state court, in pro per, a motion to vacate the settlement. He stated that as a result of his 2008 stroke, his participation at trial was a huge struggle and highly stressful, exacerbated by family and personal issues. Lane further complained about his counsel's effectiveness and stated that she pressured him to enter into the settlement out of her own self-interest. All of this combined to cause him to fear that he would suffer another stroke and die. According to him, this is why he agreed to the $1.5 million stipulated judgment though he continued to believe that he had not done anything wrong.

Lane additionally claimed that he suffered from an ongoing cognitive deficit as a result of his 2008 stroke and lacked the capacity to enter into the settlement agreement and stipulated judgment. Lane supported this contention with a declaration of a clinical psychologist specializing in geriatric psychology, as well as several unauthenticated documents and statements of friends and relatives. Each indicated that Lane's ability to understand and appreciate the consequences of signing the stipulated agreement was significantly impaired. Plaintiffs opposed the motion to vacate.

The state court denied Lane's motion to vacate. According to the court, Lane failed to submit any admissible evidence suggesting that he lacked the mental capacity to settle on the day he entered into the

settlement or suggesting that any cognitive impairment he might have suffered from at the time materially affected his understanding of the settlement or the decision to settle. The court further drew on its experiences with Lane, noted that Lane was represented by counsel, and indicated that he had the mental capacity to enter into settlement because he clearly answered the court's questions without any sign of confusion.

Lane appealed the denial of his motion to vacate. The California Court of Appeal affirmed in an unpublished memorandum decision issued in May 2018. Among other things, the Court of Appeal held: "[w]e have no reason to doubt the trial court's own observations of Lane's demeanor and mental acuteness during the trial and the October [settlement] hearing in determining Lane had the mental capacity required to make a reasoned decision."

On January 7, 2020, the state court entered the stipulated judgment in favor of plaintiffs and against Lane for $1.5 million. Pursuant to the parties' settlement agreement, the judgment included the following provision: "Judgment is for Fraudulent Concealment (Fourth Cause of Action). It is intended that this Judgment is not dischargeable in Defendant's Chapter 7 case . . . . The Parties stipulated to an order for the Bankruptcy Court that this Judgment is not dischargeable. This Court shall retain jurisdiction under [CCP] 664.6."

**F.     The bankruptcy court's decision.**

Plaintiffs then filed their motion for summary judgment in the bankruptcy court based on the preclusive effect of the stipulated judgment. As plaintiffs put it, the state court judgment established the elements necessary for fraudulent concealment under California law. Plaintiffs further pointed out that the stipulated judgment was entered into after years of litigation, including summary judgment and lengthy trial proceedings during which much evidence was presented regarding misrepresentations and nondisclosures concerning ArmorLite's roofing product. As plaintiffs explained, "the parties actively and vigorously litigated the fraud issues before the Settlement was reached and State Judgment was entered, and a substantial record was created."

Represented by new counsel, Lane opposed the summary judgment motion. According to Lane, the state court judgment could not be given issue preclusive effect because it was not supported by any factual findings. Lane additionally posited that in the context of a stipulated judgment, fraud findings could not be inferred, citing *Yaikian v. Yaikian (In re Yaikian)*, 508 B.R. 175 (Bankr. S.D. Cal. 2014). Finally, Lane reiterated his arguments that he lacked capacity to settle.

After hearing the summary judgment motion, the bankruptcy court took the motion under submission. On September 10, 2020, the bankruptcy court entered a memorandum decision granting the summary judgment motion and subsequently entered summary judgment excepting the $1.5

million judgment debt from discharge. The court granted Lane's motion for an extension of time to appeal based on excusable neglect, which was timely filed. Lane then timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in granting summary judgment against Lane under § 523(a)(2)(A) based on the preclusive effect of the state court's stipulated judgment for fraudulent concealment?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). We also review de novo the bankruptcy court's determination that issue preclusion is available. *Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 103 (9th Cir. BAP 2007). When we review a matter de novo, "we consider [the] matter anew, as if no decision had been rendered previously." *Kashikar v. Turnstile Cap. Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

If we determine that issue preclusion is available, we then review the bankruptcy court's decision to apply it for an abuse of discretion. *In re Lopez*, 367 B.R. at 103. A bankruptcy court abuses its discretion if it applies the wrong legal standard, or its findings of fact are illogical, implausible or

13

without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

The issue preclusive effect of a prior state court judgment may serve as the basis for granting summary judgment. *See Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 832 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007); *see also Grogan v. Garner*, 498 U.S. 279, 284 (1991). Based on the analysis set forth below, we hold that the bankruptcy court did not err when it applied issue preclusion to the parties' stipulated judgment entered in the state court litigation.

## A.    Stipulated judgments can support issue preclusion under California law.

We apply California law to determine the preclusive effect of plaintiffs' state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (stating that federal courts must give full faith and credit to state court judgments under 28 U.S.C. § 1738). The party asserting issue preclusion has the burden of proof to establish each of the threshold requirements. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). To satisfy this burden, the moving party "must introduce a record sufficient to reveal the controlling facts" and must "pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir.

14

1996). Any reasonable doubt regarding what the prior court decided is resolved against the moving party. *Id.*

Under California issue preclusion law, the proponent must establish the following threshold elements:

> (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.

*In re Plyam*, 530 B.R. at 462 (citing *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990)). But before applying issue preclusion, the bankruptcy court additionally needed to assess "whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy." *In re Khaligh*, 338 B.R. at 824-25 (citing *Lucido*, 51 Cal. 3d at 341-43).

In *California State Automobile Ass'n Inter-Insurance Bureau v. Superior Court*, 50 Cal. 3d 658, 664–65 (1990) ("*CSAAIB*"), the California Supreme Court held that an admission of the insured's liability set forth in a stipulated judgment entered pursuant to CCP § 664.6 was entitled to issue preclusive effect "when the parties manifest an intent to be collaterally bound by its terms." *Id.* at 664. In reaching its decision, the court distinguished mere "compromise settlements" entered pursuant to CCP

§ 998[3] from stipulated judgments entered pursuant to CCP § 664.6.[4] *Id.* at 664-65 & n.3. The *CSAAIB* court explained that the trial court has no discretion to refuse to enter a CCP § 998 compromise settlement, whereas a CCP § 664.6 stipulated judgment has more of the attributes of a traditional (adversarial) judgment. Specifically, "entry thereof is a judicial act that a court has discretion to perform" and such discretion only should be exercised where the stipulated judgment is just. *Id.*

*CSAAIB* further acknowledged that courts of other states generally have refused to give issue preclusive effect to stipulated judgments. But it reasoned:

---

[3] CCP § 998(b) provides in relevant part:

Not less than 10 days prior to commencement of trial or arbitration . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. . . .

(1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. . . .
(2) If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration.

[4] CCP § 664.6 provides in relevant part:

If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

16

> For purposes of the present case, we need not resolve this debate. It seems fair to say that by specifically stipulating to the issue of liability, the parties intended the ensuing judgment to collaterally estop further litigation on that issue. Were their intent otherwise, the parties easily could have expressly restricted the scope of the agreement.

*Id.* at 664 n.2.

Our prior decisions generally have recognized California's practice of giving preclusive effect to stipulated judgments. *See Boyce v. Hamilton (In re Boyce)*, BAP No. CC-15-1220-TaKuKi, 2016 WL 6247612, at *3-4 (9th Cir. BAP Oct. 25, 2016) ("*Boyce I*"); *see also Johnson v. W3 Inv. Partners, LP (In re Johnson)*, BAP No. SC-17-1194-LBF, 2018 WL 1803002, at *5 (9th Cir. BAP April 16. 2018), *aff'd*, 784 F. App'x 529 (9th Cir. 2019); *Boyce v. Hamilton (In re Boyce)*, BAP Nos. CC-18-1052-STaL, CC-18-1058-STaL, 2018 WL 6565685, at *7-9 (9th Cir. BAP Dec. 12, 2018) ("*Boyce II*").

## B. Admission of individual facts was not a prerequisite to giving the stipulated judgment for fraudulent concealment preclusive effect.

Lane argues that the stipulated judgment cannot be given preclusive effect because it does not include any stipulated facts. Rather, the stipulated judgment simply states that Lane is liable for fraudulent concealment and that the liability is intended to be nondischargeable. Specifically admitted facts in a stipulated judgment often support the determination that the parties manifested an intent to be bound by those facts in subsequent proceedings such that those issues are deemed actually

17

litigated and necessarily decided for purposes of applying issue preclusion. *In re Johnson*, 2018 WL 1803002, at *3; *Boyce I*, 2016 WL 6247612, at *3-4; *Hayhoe v. Cole (In re Cole),* 226 B.R. 647, 655 (9th Cir. BAP 1998*)* ("[I]f the parties stipulated to the underlying facts that support a finding of nondischargeability, the Stipulated Judgment would then be entitled to collateral estoppel application.").

But it is not essential that the stipulated judgment include stipulated facts to support issue preclusion. Here, Lane agreed to entry of judgment on plaintiffs' cause of action for fraudulent concealment. Entry of that judgment necessarily included a finding that all the elements to establish that cause of action existed. *See Younie v. Gonya (In re Younie)*, 211 B.R. 367, 374 (9th Cir. BAP 1997), *aff'd,* 163 F.3d 609 (9th Cir. 1998) ("Such a judgment necessarily included a determination of all of the facts required for actual fraud under California law."); *see also Zuckerman v. Crigler (In re Zuckerman),* 613 B.R. 707, 718 (9th Cir. BAP 2020) (holding that a judgment entered specifically based on fraud actually litigated and necessarily decided all elements necessary to sustain a judgment for fraud); *Landeros v. Pankey*, 39 Cal. App. 4th 1167, 1172–73 (1995) (California has a "line of authority [stating] that a party consenting to judgment against him admits those elements of the litigation which were 'necessarily included therein or necessary thereto' (Code Civ. Proc., § 1911) and may suffer collateral estoppel effect *unless* the parties expressly reserved or withdrew that issue from the prior judgment." (Emphasis in original)). Thus, the stipulated

18

judgment established the individual elements of fraudulent concealment under California law. Here, all the elements necessary to support a claim of fraudulent concealment under California law have been actually litigated and necessarily decided. Significantly, those elements mirror what is needed to prove the investors' § 523(a)(2)(A) claim. *See In re Zuckerman*, 613 B.R. at 714.

Ultimately, the critical question under California law remains whether the parties manifested an intent to be bound by the judgment. *CSAAIB*, 50 Cal. 3d at 664; *see also FDIC v. Daily (In re Daily)*, 47 F.3d 365, 369 & n.8 (9th Cir. 1995) (holding that by stipulating to suspend nondischargeability action pending completion of a district court RICO action, parties manifested their intent to be bound by the result in the RICO action in the nondischargeability action).

The determination of the parties' intent to be bound by the stipulated judgment must be treated like any other question regarding contractual intent:

> The absence of manifest intention on the face of the instrument would not necessarily prevent defendants from proving on remand, however, as a matter of fact, that the parties intended the unlawful detainer judgment to settle their entire relationship. A prior stipulated or consent judgment is subject to construction as to the parties' intent, and if sufficiently ambiguous may be interpreted in light of extrinsic evidence.

*Landeros*, 39 Cal. App. 4th at 1172; *see also In re Johnson,* 2018 WL 1803002, at *5 ("[W]here **the record or judgment** evidences an intent by the parties for a stipulated judgment to be preclusive . . . a court may give [preclusive] effect to that judgment." (Emphasis added)).

Lane contends that treating plaintiffs' fraudulent concealment allegations as admitted is at odds with our prior decision in *In re Cole*, 226 B.R. at 655, and with the bankruptcy court's decision in *Yaikian v. Yaikian (In re Yaikian)*, 508 B.R. 175, 185 (Bankr. S.D. Cal. 2014). But *Cole* and *Yaikian* involved prepetition waivers of dischargeability in any future bankruptcy filed by the judgment debtor. Thus, both cases stand for the well-settled proposition that prepetition waivers of discharge are unenforceable as a matter of public policy. Such prepetition agreements impermissibly interfere with a debtor's "fresh start." *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1026 (9th Cir. 2012); *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002).

Put bluntly, public policy simply does not permit the application of issue preclusion where the sole purpose of the stipulated judgment was to waive the dischargeability of the underlying debt in a future bankruptcy. *In re Cole*, 226 B.R. at 655; *In re Yaikian*, 508 B.R. at 184; *see also Wank v. Gordon (In re Wank)*, 505 B.R. 878, 889 (9th Cir. BAP 2014). Here, the settlement and stipulated judgment were entered into by the parties postpetition and only after the creditors had filed their nondischargeability action based on the

same conduct at issue in the state court action. This distinguishes Lane's case from *Cole, Yaikian,* and *Wank.*

At bottom, neither *Cole* nor *Yaikian* support the proposition that California law requires stipulated judgments to include stipulated facts to support issue preclusion in a subsequent action. Accordingly, the material question remains: did the parties manifest an intent to be bound by the stipulated judgment?

## C. There is no genuine dispute that Lane's actions objectively manifested an intent to be bound by the stipulated judgment.

The bankruptcy court granted summary judgment based on the preclusive effect of the stipulated judgment because "[b]oth the 'four corners' of the judgment and the record show the parties' intention to make the fraudulent concealment judgment preclude re-examination of the elements in this adversary proceeding." Courts grant summary judgment when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It bears repeating that only a genuine dispute of material fact will preclude summary judgment. "An issue is 'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). A fact is "material" if it may

affect the outcome of the case under the pertinent substantive law. *Anderson*, 477 U.S. at 248.

On summary judgment, all facts genuinely in dispute must be viewed, and all reasonable inferences must be made, "in the light most favorable to the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007). But where the nonmovant's evidence opposing summary judgment is conclusively refuted by other evidence in the record, the nomovant has not demonstrated a genuine issue of material fact that requires denial of summary judgment. *Id.* at 379-81.

Lane argues the bankruptcy court erred because he stated in his declaration filed in opposition to the motion for summary judgment that he never intended to admit to fraud or to have the stipulated judgment preclude litigation in the adversary proceeding. He contends that this created a genuine dispute whether the parties intended to be bound by the stipulated judgment. Based upon controlling California precedent, we disagree and find Lane's undisclosed subjective intent to be immaterial.[5]

---

[5] Lane argues *Jun Ho Yang v. Fund Management International, LLC (In re Jun Ho Yang)*, 698 F. App'x 374 (9th Cir. 2017), requires reversal of the summary judgment. There, the Ninth Circuit reversed a grant of summary judgment that a prepetition stipulated judgment entered under CCP § 664.6 precluded relitigation of fraud issues in light of the debtor's statement that "he did not intend the stipulated facts in the Settlement Agreement and Stipulation for Entry of Judgment in the prior state court action to have a preclusive effect in future proceedings." *Id.* at 374. This panel's decision being appealed, *Yang v. Fund Management International, LLC (In re Jun Ho Yang),* 2016 WL 639039 (9th Cir. BAP Feb. 17, 2016), discloses that the settlement and judgment adopted the allegations of the relevant complaints as true, and agreed to enter judgment for $3,000,000, though it did not identify any specific claim. *Id.* at *2. Neither decision

The California Supreme Court has instructed that it is the outward manifestation of the parties' intent that determines whether they should be bound by the terms of their stipulated judgment. *CSAAIB*, 50 Cal. 3d at 664. This is because stipulated judgments have a dual nature with characteristics of both a contract entered by the parties and the judgment resulting from it. *Id.* at 664-65. Consequently, courts applying California law typically apply standard contract construction principles to interpret them. *See, e.g.*, *In re Marriage of Schu*, 231 Cal. App. 4th 394, 399 (2014) (applying general contract construction principles to a stipulated judgment); *Gerwer v. Salzman (In re Gerwer)*, 253 B.R. 66, 73 (9th Cir. BAP 2000) (same); *Landeros*, 39 Cal. App. 4th at 1172 (same).

In contract matters, California distinguishes between the parties' outward manifestation of their intent and whatever intent they secretly or subjectively might be harboring. *Pac. Gas & Elec. Co. v. Zuckerman*, 189 Cal. App. 3d 1113, 1141 (1987) (citing *Brant v. Cal. Dairies, Inc.*, 4 Cal. 2d 128, 133 (1935)). The former is relevant to ascertaining what the contracting parties agreed to and the latter is not. As the California courts have explained:

> California recognizes the objective theory of contracts, under
> which it is the objective intent, as evidenced by the words of the
> contract, rather than the subjective intent of one of the parties,

provided any analysis as to the manifestation of intent on the record before them. Given our limited focus on the outward manifestation of intent, we do not find either of these unpublished decisions helpful in construing California law as to the preclusive effect of stipulated judgments.

23

that controls interpretation. The parties' undisclosed intent or understanding is irrelevant to contract interpretation.

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) (cleaned up).

California's adherence to the objective theory of contracts renders Lane's undisclosed subjective intent immaterial when determining the parties' manifestation of intent. And apart from his statement that he never intended to be bound by the stipulated judgment for fraudulent concealment, Lane offers no specific evidence or argument regarding the parties' manifestation of their intent.

In opposition to the motion for summary judgment, Lane did raise his mental capacity and argued that he mistakenly entered into the settlement agreement. He argued that these issues raised genuine disputes of material fact that precluded summary judgment on the issue of his intent to be bound by the stipulated judgment. Generally speaking, mistake and lack of capacity, under certain circumstances, can be grounds to unwind a settlement or a judgment. *See*, e.*g.*, *Comunidad en Accion v. L.A. City Council*, 219 Cal. App. 4th 1116, 1132 (2013) (evaluating mistake as grounds for relief from judgment); *In re Ginsberg's Est.*, 11 Cal. App. 2d 210, 211–12, 216-17 (1936) (evaluating party's mental capacity to form a valid contract).

The debtor in *In re Wank,* 505 B.R. at 884, raised similar allegations of duress and lack of capacity while acting under medications. *Wank* did not involve issue preclusion but rather a grant of summary judgment based on

stipulated facts made in a declaration as part of a stipulated judgment. The panel reversed the grant of summary judgment that the stipulated judgment debt was nondischargeable not on the alleged duress but rather on the court's exclusive reliance on the declaration as violative of public policy as a prepetition waiver of discharge. *Id.* at 889-91. Allegations of fraud and mistake also required remand in *Boyce I* to evaluate whether application of issue preclusion was fair and equitable, but such allegations did not bar the bankruptcy court from applying issue preclusion to the stipulated judgment. *See Boyce II*, 2018 WL 6565685 at 7.

As in *Wank* and *Boyce I*, Lane's allegations of mistake and lack of capacity raise a different question than whether the parties manifested an intent to be bound by their stipulated judgment in subsequent proceedings. Lane's mistake and lack of capacity arguments go to whether the existing stipulated judgment should continue to be recognized. In short, Lane's statements regarding his lack of mental capacity and mistake did not raise either a genuine or a material dispute concerning the parties' manifestation of intent to be bound by the stipulated judgment that he admittedly entered.[6] *See Boyce II*, 2018 WL 6565685 at 7. As demonstrated in *Boyce I*,

---

[6] Additionally, Lane raised these same arguments in the state court in support of his motion to vacate the stipulated judgment. After extensive litigation, the state court denied his motion to vacate, and the California Court of Appeal affirmed that denial. To the extent Lane is asking us to second-guess the state court's denial of his motion to vacate or the affirmance of that denial, we cannot do so. Such second-guessing would contravene the full faith and credit principles set forth in 28 U.S.C. § 1738 and would constitute an impermissible collateral attack on the state court's decisions. *See In re*

this is not to say that such allegations should not be considered when deciding whether to apply issue preclusion. Rather, such considerations are interwoven into the question of whether application of issue preclusion would be fair and consistent with sound public policy.

Importantly, Lane does not dispute that there is sufficient evidence in the record to establish that the parties manifested an intent to be bound by the stipulated judgment for fraudulent concealment. Such evidence includes plaintiffs' cause of action and allegations for fraudulent concealment, and the lengthy fraud litigation undertaken in the state court, which encompassed discovery, motion practice, and trial proceedings, and which culminated in the settlement. Even then, the state court judge discussed with Lane at length the significance of the settlement to ensure that he voluntarily and knowingly agreed to the settlement. The settlement resulted in entry of judgment on a specific cause of action for fraudulent concealment.

Unlike other cases where the parties entered into a stipulated judgment prepetition, Lane entered the settlement and stipulated judgment after filing his bankruptcy and while his nondischargeability action based on the same conduct was pending. This was not the situation in *Cole* and *Yaikian*, where the creditors attempted to deprive the debtors of any future

---

*Lopez*, 367 B.R. at 105-06; *see also Darlington v. Basalt Rock Co.,* 188 Cal. App. 2d 706, 708-09 (1961).

fresh start based on claims that did not support nondischargeability.[7] Here, in contrast, the bankruptcy court permitted the parties to proceed with the state court fraud litigation as a proxy for the nondischargeability action — after having advised them that the resolution of the fraud claims in state court could have preclusive effect in the adversary proceeding.

In light of the pending bankruptcy case and adversary proceeding, nondischargeability was always at issue. As we recognized in *Cole,* "[i]n prebankruptcy litigation, the question of the dischargeability of the debt is not in issue," but "dischargeability is the 'central issue in bankruptcy dischargeability litigation,' and bankruptcy courts have exclusive jurisdiction to determine the dischargeability of a claim under § 523(a)(2)." 226 B.R. at 653 (citing *Saler v. Saler (In re Saler),* 205 B.R. 737, 745-46 (Bankr. E.D. Pa. 1997), *aff'd,* 217 B.R. 166 (E.D. Pa. 1998)). In essence, the parties here agreed to resolve both the state court liability action and the

---

[7] As part of the settlement, Lane promised to stipulate to the nondischargeability of the debt in the pending nondischargeability action in his bankruptcy case. Lane never executed this stipulation for the bankruptcy court, and the investors did not seek summary judgment on their § 523(a)(2)(A) claim on that basis. Therefore, the enforceability of that specific term of the settlement agreement is not before us. Still, we consider this provision as substantial evidence that the parties were well aware of the pending nondischargeability action and that the resolution of the state court action could have preclusive effect in the nondischargeability action. Given the pending bankruptcy case and the adversary proceeding based on the same fraud, the public policy concerns at issue in cases involving prepetition waivers of discharge are not implicated here. *See generally In re Cole*, 226 B.R. at 653 ("[A] state court stipulated judgment where the debtor waives his right to discharge is unenforceable as against public policy. However, a stipulation in a related bankruptcy case that a debt is nondischargeable is enforceable and res judicata.").

nondischargeability adversary proceeding which depended on the same claim for fraudulent concealment. No other reason is offered for why Lane expressly committed to stipulate to the nondischargeability of the judgment debt for fraudulent concealment in his pending bankruptcy. Indeed, there was no reason or incentive to liquidate a dischargeable debt, or for the creditors to settle the state court action after years of litigation, and in the midst of trial, only to relitigate the exact same claim in the nondischargeability action.

Lane admits that he hoped to convince the investors to release their claim after he entered into the settlement but before the stipulated judgment was entered a year later in accordance with the settlement. This matter was the subject of considerable discussion during the state court settlement conference. Indeed, the state court went to great lengths to ensure that Lane understood that this was only his hope and was not part of the settlement agreement. The state court made it clear that Lane was agreeing to entry of judgment for fraudulent concealment. The provision for nondischargeability was read into the record during the settlement hearing and was included in the stipulated judgment that the state court ultimately entered. The transcript shows that Lane acknowledged he understood the terms of the settlement and agreed to them. Lane's hope to avoid entry of the stipulated judgment or the consequences of his agreement do not negate his settlement or the context in which it arose.

The investors established a strong prima facie case for summary judgment that the parties manifested an intent to be bound by the stipulated judgment for fraudulent concealment in the pending nondischargeability action. Lane was required to come forward with at least some evidence to establish a genuine dispute that the parties did not manifest an intent to be bound by the stipulated judgment. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)). In this instance, his statement of subjective intent was not material to the manifestation of the parties' intent. His declaration, therefore, did not create a genuine issue of material fact to preclude entry of summary judgment.

**D.   The bankruptcy court did not abuse its discretion when it determined that the application of issue preclusion here was just and consistent with the policies underlying the doctrine.**

When the bankruptcy court determines that issue preclusion is available, it must still decide whether such application would be fair and consistent with sound public policy. *Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 615 B.R. 572, 582 (9th Cir. BAP 2020) (citing *In re Khaligh*, 338 B.R. at 824-25). The court's consideration of fairness and public policy typically focuses on: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation[.]" *Lucido*, 51 Cal. 3d at 343; *see also Murray v. Alaska Airlines, Inc.*, 50 Cal. 4th 860, 879 (2010) (stating that policies underlying

issue preclusion "include conserving judicial resources and promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and avoiding the harassment of parties through repeated litigation.").

Even though the state court rejected Lane's lack of capacity and mistake arguments when it denied his motion to vacate the stipulated judgment, the bankruptcy court still addressed those same arguments when it considered whether application of issue preclusion in this case was consistent with fairness and public policy. *See Boyce II*, 2018 WL 6565685 at *9 ("As part of its fairness and policy analysis, the bankruptcy court duly considered Boyce's fraud and coercion charges."). Indeed, the bankruptcy court's decision here reflects that, as part of its fairness and public policy analysis, it considered at length all the circumstances of this case, including all of the arguments Lane advanced challenging the validity of the state court stipulated judgment. The bankruptcy court identified the correct policy considerations and found that each of them weighed in favor of applying issue preclusion. It simply was not persuaded that it was unjust or inconsistent with public policy for the court to give preclusive effect to the stipulated judgment. It made a reasoned, detailed analysis explaining why each consideration supported application of issue preclusion. The record supports the bankruptcy court's policy findings, and we perceive no error.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's summary judgment excepting from discharge Lane's $1.5 million judgment debt.

Concurrence begins on next page.

FARIS, Bankruptcy Judge, concurring:

I fully concur with the Panel's meticulous decision. I write separately to explain another justification for the same result.

If parties in litigation make a settlement on the record, and one party fails to perform under the settlement agreement, courts frequently consider requests to compel nonperforming parties to perform. In such a case, the court faces only three straightforward questions of contract law: (1) Is the settlement agreement enforceable? (2) If so, did the first party breach it? (3) And if so, is specific performance the appropriate remedy? *See Vasile v. Flagship Fin. Grp., LLC*, Case No. 2:12-CV-02912-KJM-CKD, 2014 WL 2700896, at *3 (E.D. Cal. June 13, 2014) (stating that enforcement of settlement agreement requires determination of "a valid, enforceable contract[;]" "whether the contract was materially breached, and if so, . . . by whom[;]" and "the appropriate remedy").

The differences between my hypothetical case and this case are that the parties put their agreement on the record in state court, the state court entered a judgment based on the agreement, and enforcement came before a federal bankruptcy judge.

The bankruptcy court focused on the state court's judgment and applied the rules of issue preclusion. As the Panel's decision makes clear, those rules are extensive and demanding, and the bankruptcy court applied them correctly.

1

But the bankruptcy court did not have to follow that path. Instead, it could have simply enforced the parties' settlement agreement under basic contract law principles. *See generally Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709-10 (9th Cir. 1989) ("The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract. An action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court. This is so even if the party resisting specific enforcement disputes the formation of the contract." (citations and quotation marks omitted)); *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138-39 (9th Cir. 2002) (holding that the court may summarily enforce a settlement agreement without an evidentiary hearing when the parties agreed to the terms in open court).

If the bankruptcy court had approached the dispute from the contractual perspective, it would have faced only the three questions stated above, and the court could easily have answered yes to each of them. The parties' settlement agreement was enforceable; Mr. Lane breached it by (among other things) failing to file a stipulation of nondischargeability in the bankruptcy court; and specific enforcement of the nondischargeability stipulation was appropriate.

This is not to say that the bankruptcy court should or must enforce a stipulation to nondischargeability in all cases. For example, the bankruptcy court may not enforce a prebankruptcy agreement that includes a waiver of

2

discharge. *See Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002) ("It is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code.").

But this case involves a settlement agreement made after the debtor filed a bankruptcy case and after the creditor initiated a nondischargeability action in bankruptcy court. An agreement to settle a nondischargeability dispute in bankruptcy court is enforceable. *See, e.g., Kim v. Riihimaki (In re Kim)*, BAP Nos. HI-17-1066-LBTa, HI-17-1137-LBTa, 2017 WL 5634224, at *5 (9th Cir. BAP Nov. 21, 2017) (holding that the bankruptcy court did not err in applying state law to determine that settlement agreement concerning nondischargeability claims was enforceable), *aff'd*, 753 F. App'x 451 (9th Cir. 2019). The settlement agreement announced in the state court was the functional equivalent of a settlement agreement announced in the bankruptcy court. The bankruptcy court could have treated the settlement agreement announced in the state court the same as it would have treated a settlement agreement made in its own courtroom. *See, e.g., Seaport Cap. Partners, LLC v. Speer (In re Speer)*, 558 B.R. 67, 73 (Bankr. D. Conn. 2016) (holding that it was proper for the bankruptcy court to consider enforcement of a state court settlement agreement because there was no "absolute bar to other courts considering whether a [state court] settlement agreement exists if they have cause to do

3

so."), *aff'd*, No. 3:16-CV-1665 (RNC), 2018 WL 655113 (D. Conn. Feb. 1, 2018).

In some cases, it might be simpler to employ the rules of preclusion than the rules of contract. If a party disputes the existence or terms of a settlement agreement, the court might have to hold an evidentiary hearing. *Adams*, 876 F.2d at 708 ("Ordinarily, a district court is empowered to enforce a settlement agreement through summary proceedings. However, where the parties dispute the existence or terms of the agreement, an evidentiary hearing is required." (citations omitted)); *City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 958 (9th Cir. 1994) ("[A] court has no discretion to enforce a settlement where material facts are in dispute; an evidentiary hearing must be held to resolve such issues."). But there was no need for an evidentiary hearing in this case because Mr. Lane's statements on the record in the state court foreclose any legitimate argument that he did not agree to the settlement. *See Doi*, 276 F.3d at 1138 ("Any question as to [plaintiff's] intent to be bound was answered when she appeared in open court, listened to the terms of the agreement placed on the record, and when pressed as to whether she agreed with the terms, said 'yeah.'"); *id.* at 1139 ("[T]here was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court.").

4

Approaching the problem from a preclusion perspective was not error. My only purpose is to point out that applying contractual principles would have sent the bankruptcy court on a less arduous path.